# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TINA TURNER and JAMES GARNER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 14-cv-9880 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| M.B. FINANCIAL BANK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant M.B. Financial Bank's motion to dismiss [92], Defendant Digby's Detective & Security Agency, Inc.'s motion to dismiss [102], and Defendants City of Chicago, Chicago Police Officer V. L. Wathen (Star #19653), and Chicago Police Officer E. E. Kujawa (Star #9325)'s motion to dismiss [93]. For the reasons set forth below, Defendant M.B. Financial's motion [92] and Digby's motion [102] are granted, and Defendants City of Chicago, Officer Wathen, and Officer Kujawa's motion [93] is granted in part and denied in part. This case is set for further status on October 19, 2017, at 9:30 a.m.

**I.    Background**

Plaintiffs Tina Turner and James Garner lived next to a local branch of M.B. Financial Bank, located near Sherman Park in Chicago, Illinois. [86, ¶¶ 11, 12.] M.B. Financial "contracted with Digby's Detective & Security Agency, Inc." ("Digby") to provide "armed security guard services" for its branches, and Digby stationed Andre Lamb as a security guard at the Sherman Park branch on October 30, 2013. *Id.* ¶¶ 8, 13. At approximately noon that day, Plaintiff Turner was approached by Defendant Lamb while Plaintiff was in the alley between her home and the bank branch. *Id.* ¶ 10. Plaintiffs allege that Lamb "ran off Bank property and into

the alley and aimed a gun at Turner's head, shouting, 'Don't you f*cking move or I'll blow your brains out.'" *Id.* ¶ 14. Lamb then grabbed Turner; dragged her by the arms and body out of the alley "toward the public sidewalk"; yelled, "I'm taking you inside the Bank"; "violently attacked" Turner on the ground; "and pulled her arms behind her back to restrain her." *Id.* ¶¶ 16, 17. During these events, Plaintiff Garner allegedly walked outside the house and yelled at Lamb to release Turner. *Id.* ¶ 18. Lamb then "slammed Turner to the ground and used his fully body weight to restrain Turner" as Bank employees watched. *Id.* ¶¶ 19, 20.

"Several minutes later," an unidentified "White-Shirt Officer" arrived and then "violently jerked Turner's arms backwards and yelled at her to 'get up.'" [86, ¶¶ 22–25.] Turner alleges that she did not resist—indeed, she could not because Defendant Lamb was still "sitting on her." *Id.* ¶ 28. "The White-Shirt Officer then handcuffed Turner's hands behind her back," and Defendant Lamb got up from sitting on her. *Id.* ¶ 30. Defendants Officer V. L. Wathen, Officer E.E. Kujawa, and other officers "arrived on the scene during the course of the struggle." *Id.* ¶ 31. Turner complained that she needed medical attention, but was placed in a patrol car for 30 minutes. *Id.* ¶ 32. She was ultimately taken to a hospital and released back into police custody, after which she was charged with misdemeanor offenses, including battery and littering. *Id.* ¶ 34. Eventually, these charges were dismissed. *Id.* Plaintiffs contend that these actions were taken in retaliation for unrelated lawsuit that Plaintiffs had filed against the City of Chicago, several officers, and M.B. Financial nearly a year earlier. *Id.* ¶¶ 35–36.

Based on these events, Plaintiffs filed this lawsuit in December 2014. Plaintiffs proceeded on their own for more than a year. After an arrangement with prospective counsel fell through [see 60], Plaintiffs filed a motion for recruitment of counsel in March 2016. The Court granted the motion, and through counsel Plaintiffs filed a third amended complaint in November

2016 asserting thirteen claims against eight defendants, including the City of Chicago. [86.] Plaintiffs pursue claims under 42 U.S.C. § 1983 for excessive force, false arrest, and conspiracy, as well as state law claims for malicious prosecution, assault and battery, intentional infliction of emotional distress, respondeat superior, and indemnification. Defendants M.B. Financial, Digby, the City of Chicago, Officer Wathen, and Officer Kujawa filed three motions to dismiss [92; 93; 102]. The only named Defendant who did not move to dismiss is Defendant Lamb—likely because he has not entered an appearance. Many of the claims against these Defendants are derivative of the claims asserted against Defendant Lamb, and so Defendants challenge these underlying claims as well.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of

Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

**III.　Analysis**

This is Plaintiffs' fourth complaint. [See 1; 30; 33; 86.] Plaintiffs' original complaint, filed on December 9, 2014 [1], did not include the names of anyone who interacted with Plaintiffs on October 30, but instead referred to "unknown M.B. Bank Guard" and "Unknown Police Officer." *Id.* at 2, 4. The same was true of the first amended complaint filed on July 31, 2015, except that Plaintiffs alleged that the white-shirted police officer possibly named Jerome. [30, at 6 (referring to "European-American Male Chicago Police White-Shirted Lieutenant Defendant (Jerome?)").] The second amended complaint filed on August 11, 2015 also did not name these Defendants. The first time that Plaintiffs identified Defendants Lamb and Officers Wathen and Kujawa by name was the third amended complaint, filed on November 16, 2016 [86]. Several Defendants now move to dismiss on statute of limitations grounds, which the Court turns to first.

**A.　Statute of Limitations**

Dismissal based on a statute of limitations is an affirmative defense. See Fed. R. Civ. P. 8(c)(1). Nevertheless, a court can grant a motion to dismiss where a plaintiff pleads itself out of court by establishing that a defendant is entitled to a statute of limitations defense. See *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (explaining that dismissal is appropriate "where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations."); accord *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009) ("[D]ismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness.").

"In Illinois, the statute of limitations period for § 1983 claims is two years." *Draper v.*

4

*Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. Ann. 5/13-202). "[T]he claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (citation and internal quotation marks omitted). Courts "use a two-step test to determine the accrual date: (1) we identify the injury and (2) we determine when the plaintiff could have sued for that injury." *Id.* When it comes to state law claims, "Illinois local governmental entities and their employees * * * benefit from a one-year statute of limitations for 'civil actions' against them." *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (quoting 745 Ill. Comp. Stat. 10/8–101(a)). State law personal injury claims against non-governmental employees, including for malicious prosecution, must be filed in two years. 735 Ill. Comp. Stat. Ann. 5/13-202. Plaintiffs assert federal and state law claims with different accrual dates against governmental and non-governmental employees. All of them are time-barred.

First, Plaintiffs assert Section 1983 claims against several police officers. Specifically, they allege that Defendant "White-Shirt Officer" used excessive force against Plaintiff Turner (Count I), this Defendant, Officers Wathen and Kujawa, and the other unidentified officers falsely arrested Plaintiff Turner (Count II), and all of these Defendants entered into "spontaneous agreement" with Defendant Lamb to conspire to violate Plaintiffs' constitutional rights (Count IV). [86, ¶¶ 39–52; 60–65.] Plaintiffs' injuries regarding these three claims occurred on October 30, 2013—the date of the alleged false arrest, excessive force, and "spontaneous" conspiracy. The statute of limitations for these claims began to run on this date as well. See *Wallace v. Kato*, 549 U.S. 384, 397 (2007) ("We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Gonzalez v. Entress*, 133 F.3d 551, 555 (7th Cir. 1998) ("Application

5

of excessive force * * * is immediately actionable"); *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (holding that conspiracy claim accrues when plaintiff "was aware of every act allegedly committed pursuant to that conspiracy that injured him"); *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (holding that accrual date for a "claim of conspiracy to commit constitutional violations" "recast" as a false arrest claim was the same as the false arrest claim's accrual date).

Based on these principles, Plaintiffs had until October 30, 2015, to pursue these three Section 1983 claims against Officers Wathen and Kujawa. These Defendants first appear in the third amended complaint filed on November 16, 2016 [86]. Accordingly, these claims are untimely. Although references to the unknown officer now referred to as "White-Shirt Officer" appeared in Plaintiffs' first complaint [1, at 4], Plaintiffs still do not know his name. Thus, any claim against this officer—assuming his name is eventually discovered—is and will be untimely. See *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998) ("In this case, [plaintiff] did not make a mistake concerning Officer Sotirakis' identity when he filed his original complaint; he simply did not know the identity of the police officer who pulled him over on January 26, 1995. Accordingly, when [plaintiff] later amended his complaint to name Officer Sotirakis as a defendant, that amendment did not relate back to the filing of his original complaint. Thus, because [plaintiff] did not amend his complaint to name Officer Sotirakis as a defendant until after the statute of limitations had expired, the district court properly dismissed his complaint against Officer Sotirakis as untimely."); *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) ("Thus, even were [plaintiff] to identify the proper defendant at this time, an amended complaint naming that defendant would not relate back because [plaintiff] has not satisfied Rule 15(c)(3)'s mistake requirement. An amended complaint would be futile because it would be barred by the statute of limitations."). The claims against the unnamed "other unknown officers"

cannot be pursued at this late date for the same reason. In short, Counts I, II, and IV against Defendants Wathen, Kujawa, "White-Shirt Officer," and the "other unknown officers" must be dismissed unless they can be saved by equitable tolling.

Second, Plaintiffs pursue various state law claims against these police officers: malicious prosecution, asserted against all of the police officer defendants (Count III); assault and battery, asserted against White Shirt Officer (Count V); and intentional infliction of emotional distress ("IIED"), asserted against the White Shirt Officer (Count VIII). [86.] Pursuant to the one-year statute of limitations for state law claims against governmental employees, Plaintiffs' assault and battery and IIED claims against these Defendants began accruing on October 30, 2013, and had to be filed by October 30, 2014. The malicious prosecution claim accrued on December 9, 2013—the date that Turner's arrest was stricken with leave to reinstate [93, at 5]—and had to be filed by December 9, 2014. Plaintiffs' third amended complaint missed both of these deadlines by close to two years. Accordingly, Counts III, V, and VIII are untimely unless tolled.

Third, Plaintiffs also assert the Section 1983 conspiracy claim (Count IV) against Defendant Lamb. As described above, Plaintiffs had until October 30, 2015, to pursue a claim against Defendant Lamb based on the two-year statute of limitations for Section 1983 conspiracy claims. Like "White Shirt Officer," Defendant Lamb was referenced in the original complaint as "unknown M.B. Bank Guard." [1, at 4.] And like "White Shirt Officer," Defendant Lamb was not named as a Defendant until the November 16, 2016 amended complaint [86]. As a result, the federal claim against Defendant Lamb is untimely and cannot relate back to the original complaint under Federal Rule of Civil Procedure 15(c). *Baskin*, 138 F.3d at 704; *King*, 201 F.3d at 914. Subject to equitable tolling, this claim must be dismissed.

Fourth, Plaintiffs assert the same state law claims against Defendant Lamb: assault and

battery (Count VI); malicious prosecution (Count VII); and IIED (Count IX). [86.] Because of Illinois's two-year personal injury state of limitations, 735 Ill. Comp. Stat. Ann. 5/13-202, the IIED and assault and battery claims needed to be filed against Defendant Lamb by October 30, 2015, and the malicious prosecution claim needed to be filed against him by December 9, 2015. None of these claims were filed against him until he was named as a Defendant in November 16, 2016, which means these claims are time barred unless they are tolled.

B. **Equitable Tolling**

The fact that Defendants moved to dismiss most of Plaintiffs' claims as untimely could not have come as a surprise to Plaintiffs. Anticipating this issue, a section of the third amended complaint is titled, "Equitable Tolling." [86, at 15.] Plaintiffs allege that their first three complaints in 2014 and 2015 were filed when they were *pro se*, and they "were unable to identify any individual Chicago Police Officers or the Digby's security guard until after they were appointed counsel on March 25, 2016" "despite the exercise of reasonable diligence." *Id.* ¶¶ 106, 107. Plaintiffs allege that "through no fault of their own and despite the best of their abilities, these [Defendants'] names were not previously available to Plaintiffs." *Id.* ¶ 108.

"Generally, a statute of limitations may be tolled under one of two common law doctrines: equitable estoppel or equitable tolling." *Aleman v. Dart*, 2010 WL 502755, at *3 (N.D. Ill. Feb. 9, 2010).[1] "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear*, 275 F.3d at 595. "[A]n essential element" is that Plaintiffs "exercised due diligence," which means they "acted reasonably." *Id.* "[O]nce the limitations period has expired, any further extension is limited to the time necessary to find such additional information

---

[1] The Seventh Circuit has expressed doubts about whether equitable tolling exists under Illinois law. *See, e.g.*, *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001); *Fid. Nat. Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006).

8

as the plaintiff absolutely needs in order to be able to file a suit." *Fid. Nat.*, 436 F.3d at 839.

There are at least three reasons why equitable tolling does not apply to Plaintiffs' claims. First, Plaintiffs' initial *pro se* status does not excuse the obligation to exercise due diligence. *Trejo v. Vill. of Itasca*, 2004 WL 2608285, at *9 (N.D. Ill. Nov. 16, 2004) ("However, a plaintiff's *pro se* status does not, of its own accord, provide an independent basis for equitable tolling."); accord *Cosby v. United Air Lines, Inc.*, 1996 WL 204323, at *3 (N.D. Ill. Apr. 24, 1996). If even *pro se* prisoners are not excused from exercising reasonable diligence, *Aleman*, 2010 WL 502755, at *4, Plaintiffs certainly cannot avoid this obligation. A "lack of legal expertise is not a basis for invoking equitable tolling," *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008), and Plaintiffs do not articulate any reason that a lawyer was needed to identify Defendants' names.

Second, neither the third amended complaint nor Plaintiffs' response [113] provides any explanation as to how they exercised "all due diligence" to obtain the names of their arresting officers and Defendant Lamb. In fact, Plaintiffs do not disclose *anything* they did to learn the names of these Defendants before they were appointed lawyers. For example, they lived next door to the M.B. Financial branch where Defendant Lamb allegedly worked [86, ¶ 12], and do not describe any obstacles that prevented them from asking for or learning his name. Similarly, they could have ordered a copy of their arrest report, which would have disclosed the names of their arresting officers. Plaintiffs' bare assertion that they exercised reasonable diligence in their amended complaint, without any further elaboration in their response, is insufficient to demonstrate their diligence in pursuing these claims.

Third, even if their *pro se* status entitled them to some latitude on the degree of due diligence required, Plaintiffs did not request that the Court recruit counsel for them until March 1, 2016 [see 60], and were appointed counsel later that month [see 70, 73, 86, ¶ 107]. Yet, they did

not file their third amended complaint until November 16, 2016. If the only hold up to learning these Defendants' names was the absence of an attorney, Plaintiffs do not explain why it took almost eight months to file a new complaint naming these Defendants after they received counsel. See *Elmore v. Henderson*, 227 F.3d 1009, 1013 (7th Cir. 2000) ("[Plaintiff] could not possibly invoke the doctrine of equitable tolling unless he sued just as soon as possible after the judge's action made him realize that the statute of limitations had run. He waited four months to sue and has offered no excuse for the delay."). Plaintiffs do not explain this delay, let alone demonstrate that this was the soonest that they could possibly name these Defendants. *Fid. Nat.*, 436 F.3d at 839. Therefore, equitable tolling does not apply. The Counts I, II, III, IV, V, VI, VII, VIII, and IX must dismissed as time-barred against the police officer Defendants and Defendant Lamb.

### C. Respondeat Superior: M.B. Financial Bank

Plaintiffs only claim against Defendant M.B. Financial is for respondeat superior liability. [See 86, ¶¶ 103–05.] Plaintiffs allege that Defendant Lamb was "an agent of the Bank, acting at all relevant times within the scope of his employment." *Id.* ¶ 104. M.B. Financial contends that Plaintiffs' have pled themselves out of this claim through their complaint.

A person injured by the tortious act of another typically must seek relief from the person who caused the injury. See *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 42. The doctrine of *respondeat superior*, which provides that a "principal" may be liable for the tortious actions of its "agent" even if the principal itself does not engage in any conduct with the plaintiff, is an exception to this general rule. *Id.* "A principal-agent relationship is said to exist where the principal has the right to control the manner and method in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Lang v. Silva*, 306 Ill. App. 3d 960, 972 (1999). In contrast, there is typically "no vicarious liability * * * for the actions of

independent contractors." *Lawlor*, 2012 IL 112530, ¶ 42. "An independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work." *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 13 (2004) (citation and internal quotation marks omitted).

The determination of whether a person is an "agent" or "independent contractor" is often fact-intensive. *Lang*, 306 Ill. App. 3d at 972. The analysis turns primarily on the "level of control" over the performance of the assigned work. *Horwitz*, 212 Ill. 2d at 13. Factors that bear on this question include "(1) the question of hiring; (2) the right to discharge; (3) the manner of direction of the servant; (4) the right to terminate the relationship; and (5) the character of the supervision of the work done." *Lawlor*, 2012 IL 112530, ¶ 44. In some cases, the agent or independent contractor status may be "decided as a matter of law," such as "when the relationship is so clear as to be indisputable." *Lang*, 306 Ill. App. 3d at 973.

M.B. Financial argues that the complaint states that it "contracted" with Digby for "armed security guard services" and Lamb was "employed by Digby's as an armed security guard," which means that Lamb must have been M.B. Financial's independent contractor. [86, ¶¶ 8, 10; 92, at 3.] The Court cannot reach that conclusion on this posture. Defendant's argument seemingly focuses on the first factor from *Lawlor* (hiring), but there is no further discussion of any of the remaining four factors. The Court cannot resort to evidence outside of the complaint's four corners to confirm whether M.B. Financial had the right to terminate Lamb or control his work. Notably, Defendant relies on summary judgment cases as support for resolving Lamb's agent or independent contractor status on a motion to dismiss. See *Dixon v. MB Real Estate Servs., LLC*, 2016 IL App (1st) 152329-U, ¶ 14. In any event, "[t]hat someone is an independent contractor does not bar the attachment of vicarious liability for [his] actions if [he] is also an agent. A person

11

may be both an independent contractor and an agent with the authority both to control the details of the work and also the power to act for and to bind the principal in business negotiations within the scope of [the] agency." *Horwitz*, 212 Ill. 2d at 13. These facts do not appear in the complaint, and the few facts that are pled do not make it "so clear as to be indisputable" that Lamb was an independent contractor as a matter of law.[2] *Lang*, 306 Ill. App. 3d at 973.

But there is a much more fundamental problem with Plaintiffs' standalone *respondeat superior* claim: it is not viable under Illinois law. As the Illinois Supreme Court has explained, "vicarious liability is not itself a claim or cause of action." *Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 24; accord *Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403, at *3 (N.D. Ill. Mar. 3, 2016) ("[Defendant] is correct— *respondeat superior* is not by itself a cause of action."). Rather, vicarious liability is a "theory of recovery" that "depends upon establishing a relationship between the allegedly [wrongful] actor and the alleged principal." *Wilson*, 2012 IL 112898, ¶¶ 24, 25. "Without the underlying cause of action * * * against the [agent], plaintiffs would have no legal claim against the [principal]." *Id.* ¶ 24; accord *Bachenski v. Malnati*, 11 F.3d 1371, 1377–78 (7th Cir. 1993) ("[W]hen *respondeat superior* is the sole asserted basis of liability against a master for the tort of his servant an adjudication on the merits in favor of either the master or servant precludes suit against the other[.]"); see also *Smith v. City of Chi.*, 820 F.2d 916, 918–19 (7th Cir. 1987) (holding that dismissal on statute of limitations grounds is a decision on the merits). In other words, if the underling claim against Lamb is not viable, there is no freestanding, independent basis to pursue vicarious liability for his actions against M.B. Financial. Because the claims against Lamb are time-barred, vicarious liability for his actions cannot be imposed against

---

[2] The inability to perform this analysis is in large part because of the conclusory way that this claim is pled. But because the claims against Lamb are legally insufficient in light of the statute of limitations, the Court sees no reason to provide Plaintiffs with an opportunity to replead this claim with greater factual specificity that could satisfy *Twombly*.

12

M.B. Financial. Therefore, Count XIII is dismissed.

## D. Respondeat Superior: Digby's Detective & Security Agency, Inc.

Plaintiffs assert an identical *respondeat superior* claim against Digby. [See 86, ¶¶ 100–02.] As with M.B. Financial, claims for vicariously liability against Digby based on time-barred allegations against Defendant Lamb cannot proceed. See *Wilson*, 2012 IL 112898, ¶ 24; *Bachenski*, 11 F.3d at 1377–78. Therefore, Count XII is dismissed.

## E. City of Chicago Claims

Plaintiffs pursue four claims against the City of Chicago: excessive force under Section 1983 (Count I), false arrest under Section 1983 (Count II), *respondeat superior* under state law (Count X), and indemnification under state law (Count XI). [86.]

Similar to Plaintiffs' *respondeat superior* claims against M.B. Financial and Digby, Plaintiffs' *respondeat superior* claim against the City of Chicago is based on the alleged misconduct of Officer Wathen, Officer Kujawa, White Shirt Officer, and the other unidentified Chicago police officers. [86, ¶ 95.] The Court has concluded that those underlying claims are time-barred, which means that *respondeat superior* is not a viable theory of recovery against the City of Chicago based on these actions. *Wilson*, 2012 IL 112898, ¶ 24; *Bachenski*, 11 F.3d at 1377–78. Therefore, Count X is dismissed.

Count XI asserts a claim for indemnification against the City of Chicago under the Illinois Government and Government Employee Tort Immunity Act, 745 Comp. Stat. Ann. 10/9–102, which provides that a local public entity must "pay any tort judgment or settlement for compensatory damages * * * for which it or an employee while acting within the scope of his employment is liable." [86, ¶¶ 97–99.] This statute "does not bestow a right of action whereby a plaintiff may sue a municipality directly." *Horstman v. Cty. of DuPage*, 284 F. Supp. 2d 1125,

1131 (N.D. Ill. 2003) (citing *Wilson v. City of Chi.*, 120 F.3d 681, 685 (7th Cir. 1997)); accord *Taitts v. Verpill*, 2012 WL 1068753, at *7 (N.D. Ill. Mar. 29, 2012). Such a claim may be pursued only where "conditioned on a possible judgment against the Defendant Officers, who are employees of the City." *Perkins v. O'Shaughnessy*, 2011 WL 579333, at *3 (N.D. Ill. Feb. 9, 2011); accord *Miles v. Vill. of Dolton*, 2016 WL 1161293, at *8 (N.D. Ill. Mar. 23, 2016); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 748 (N.D. Ill. 2016); *Tillman v. Burge*, 813 F. Supp. 2d 946, 981 (N.D. Ill. 2011); *Kitchen v. Burge*, 781 F. Supp. 2d 721, 740 (N.D. Ill. 2011). Because not judgment is possible against these officers based on the statute of limitations, there is no basis for a placeholder indemnification claim that can be pursued against the City of Chicago. Count XI is dismissed as well.

That leaves Plaintiffs' two Section 1983 claims. A municipality can be held liable under Section 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy," causes the constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 536 U.S. 658, 694 (1978). A municipality cannot be held liable solely on a *respondeat superior* basis. *Id*. at 691. The Seventh Circuit recognizes three paths to municipal liability: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (quoting *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)).

To state a *Monell* claim under the second prong, a plaintiff must plead "factual content that

allows the court to draw the reasonable inference" that the municipality maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Mere "legal conclusions or elements of the cause of action" must be disregarded. *Id.* at 617. As a result, "boilerplate" allegations that repeat the elements of a *Monell* claim without any further factual content are dismissed for failure to state a claim. See, *e.g.*, *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) ("[B]y alleging 'widespread practices,' 'customs,' and 'unofficial policies,' Plaintiff merely states boilerplate legal conclusions that are the elements of her *Monell* claim."); *Annan v. Vill. of Romeoville*, 2013 WL 673484, at *6 (N.D. Ill. Feb. 25, 2013) (holding that an allegation that defendant "maintains a policy by which officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such" was insufficient to state a *Monell* claim); *Sheppard v. Vill. of Glendale Heights*, 2011 WL 6102012, at *4 (N.D. Ill. Dec. 5, 2011) (holding that an allegation that plaintiff was discriminated against on the basis of her sex and race "pursuant to wide-spread practice" of the defendant village was insufficient to state a *Monell* claim). A plaintiff must also be able to show that the municipality's policy was the "moving force" behind the alleged injury; that is, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); see also *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Teesdale v. City of Chi.*, 690 F.3d 829, 833 (7th Cir. 2012).

Defendant argues that "Plaintiffs have not pled any direct claims against the City under *Monell*." [93, at 7.] That is largely accurate with respect to Count II, the false arrest claim. Plaintiffs allege vaguely that their "injuries were caused by employees of the City of Chicago, including but not limited to the Defendant Officers, who acted pursuant to the City's policies and

15

practices in engaging in the misconduct described in this Count." [86, ¶ 52.] Count II does not describe any of "the City's policies and practices" regarding false arrests and there are no specific allegations regarding these specific policies and practices anywhere else in the complaint. Plaintiffs do not identify what this custom is, plead facts to substantiate its existence, or plead facts suggesting it is plausible that the City's custom was the moving force behind Plaintiff Turner's alleged false arrest. Plaintiffs' are essentially pursuing a *respondeat superior* theory against the City under Claim II, and that claim is not viable under *Monell*. 536 U.S. at 694. This is Plaintiff's fourth complaint, and the Court sees no reason to give Plaintiff another bite at the apple to try to reframe these conclusory allegations as a *Monell* claim. Accordingly, Count II against the City of Chicago is dismissed.[3]

The same cannot be said of Count I, the excessive force claim. Contrary to Defendant's contention, Plaintiffs are plainly asserting a *Monell* claim in the complaint. [See 86, ¶ 44.] Plaintiffs allege that "[a]s a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference." *Id.* ¶ 44(a). They allege that Defendant "facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar conduct, thereby leading Chicago Police Officers to believe their actions will not be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff." *Id.* ¶ 44(b). They contend that "officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number

---

[3] An almost identical allegation appears in Count IV (conspiracy), but that claim is not formally asserted against the City of Chicago [86, at 10–11]. If it was, the Court would dismiss it for the same reasons.

of cases." *Id.* ¶ 44(c). Moreover, Defendant is "aware of," "condone[s]," and "facilitate[s]" by their inaction a 'code of silence' in the Chicago Police Department." *Id.* ¶ 44(d). In particular, "officers routinely fail to report instances of police misconduct and lie to protect each other," are not disciplined for this behavior, and Defendant has "failed to act to remedy the patterns of abuse" despite its knowledge of these problems. *Id.* ¶ 44(e).

While these allegations bare some resemblance to boilerplate, they have sufficient factual content to make Plaintiffs' claim plausible. Plaintiffs allege that the City fails to adequately investigate and punish past instances of excessive force by police, which has the effect of condoning and encouraging excessive force by police in the future, such as the alleged excessive force that occurred here. See *McLin By & Through Harvey v. City of Chi.*, 742 F. Supp. 994, 1002 (N.D. Ill. 1990) ("Plaintiffs clearly allege that the code of silence encourages abusive behavior by officers because the officers know they are less likely to be disciplined, and that the abusive behavior which is thus encouraged includes the actions at issue in this case."). Similarly, Defendant's "disproportionately small" number of findings of police wrongdoing and alleged indifference to the underreporting of excessive force claims because of the police's "code of silence" are factual allegations that reinforce plausibility of any "policy or custom." See, *e.g.*, *Al Matar v. Borchardt*, 2017 WL 2214993, at *3 (N.D. Ill. May 19, 2017) (denying motion to dismiss *Monell* claim based on code of silence allegations); accord *Freeman v. City of Milwaukee*, 994 F. Supp. 2d 957, 967 (E.D. Wis. 2014); *Gilbert ex rel. James v. Ross*, 2010 WL 145789, at *3 (N.D. Ill. Jan. 11, 2010); *Eckert v. City of Chicago*, 2009 WL 1409707, at *5– (N.D. Ill. May 20, 2009). These are more than simply legal conclusions, and Defendant does not explain why these allegations are insufficient. Although borderline, there are enough factual allegations in the third amended complaint to "nudge[]" this claim "across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570; see also *White v. City of Chi.*, 829 F.3d 837, 844 (7th Cir. 2016). Therefore, Plaintiff states a claim under *Monell* against the City of Chicago in Count I.

**IV.     Conclusion**

For the foregoing reasons, M.B. Financial Bank's motion to dismiss [92] is granted, Digby's Detective & Security Agency, Inc.'s motion to dismiss [102] is granted, and Defendants City of Chicago, Officer Wathen, and Officer Kujawa's motion [93] is granted in part and denied in part.   All claims except Count I against the City of Chicago are dismissed with prejudice.   This case is set for further status on October 19, 2017, at 9:30 a.m.

Dated: October 3, 2017

Robert M. Dow, Jr.
United States District Judge